## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Michael T. McDonnell, Esq. (18861990)
KUTAK ROCK LLP
100 N. 18th Street, Suite 1920
Philadelphia, PA  19103
(215) 299-4384 (Telephone)
Michael.Mcdonnell@kutakrock.com
Counsel for Plaintiff

ARCO DESIGN/BUILD INDUSTRIAL
PHILADELPHIA, INC.

              Plaintiff,

v.

AMERICAN BEVERAGE PACKERS URBAN
RENEWAL, LLC; HUEN ELECTRIC NEW
JERSEY and XL INSURANCE AMERICA INC.

              Defendants.

**CASE NO. _____**

## COMPLAINT

Plaintiff ARCO Design/Build Industrial Philadelphia, Inc., ("Plaintiff" or "ARCO"), by and through its undersigned counsel, and for its Declaratory Judgment Complaint against Defendants Huen Electric New Jersey ("Huen") and XL Insurance America, Inc. ("XL" or "Defendant"), and American Beverage Packers Urban Renewal, LLC ("American") does state and allege as follows:

## PARTIES

1.  ARCO is a corporation created and existing under the laws of the State of Pennsylvania with a principal place of business located in King of Prussia, Pennsylvania.

2.      Upon information and belief, Huen is an electrical contractor, which is incorporated in the state of New Jersey with a principal place of business in Columbus, NJ.

3.      XL is a commercial general liability insurer, which is incorporated in the state of Delaware with a principal place of business in Stamford, Connecticut.

4.      Upon information and belief, American is a New Jersey registered limited liability company incorporated in the state of New Jersey with its principal place of business in Edison, NJ.

## JURISDICTION AND VENUE

5.      ARCO brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202.  An actual controversy exists between the parties, as more fully alleged herein.

6.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy requirement is met because the damages in this case exceed $75,000.00, as more fully alleged herein.

7.      This Court has personal jurisdiction over Defendants as (1) Huen is incorporated in the State of New Jersey and has its principal place of business in Middlesex County, NJ; (2) XL provided insurance coverage to Huen in New Jersey to cover Huen's general liability arising out of, *inter alia*, completed operations in the state of New Jersey; (3) American is a New Jersey registered and incorporated limited liability company; (4) the question of the duty to defend ARCO as an additional insured under XL's policy covering Huen arises out of an arbitration commenced by American in New Jersey related to construction defects arising out of its beverage bottling and processing plant in Woodbridge, NJ.

8.      Pursuant to 28 U.S.C. § 1391, venue is proper in this Court, as a substantial part of the events giving rise to the claims asserted herein occurred in Woodbridge Township, Middlesex County, NJ.

9.      All necessary parties have been joined to this action.

## FACTUAL BACKGROUND

**American contracts with ARCO to build an Arizona Beverage Facility**

10.     American acquired a property known as the Keasby site in Woodbridge, NJ, and made a determination to develop the site for the purpose of building a beverage processing and bottling facility for its products.

11.     In early 2017 American approached ARCO to act as the design-builder for the Project.

12.     The Project was designed to proceed in two phases, the first, Phase I, being construction of the shell and supporting infrastructure (NE177), the second, Phase II, being the installation of the tenant improvements and processing equipment (NE575). (See Owner-Design Builder contracts attached as Exhibit "A" and "B").

13.     ARCO engaged Huen as the design electrical subcontractor for both phases of the development. (See ARCO – Huen contracts attached as Exhibit "C" and "D"). Huen designed and installed the electrical system for ARCO.

**Huen Secures Insurance Coverage for ARCO on the Project**

14.     Both ARCO – Huen contracts contain identical terms requiring Huen to provide ARCO primary and non-contributing Named Additional Insured's Commercial General Liability coverage.

15.     Further to these contracts, Huen agreed to name ARCO as a primary and non-contributing Named Additional Insured for current, ongoing and completed operations coverage

for three years after **Final Completion of the Project.** (See Insurance Requirements set forth as attachment Exhibit "B" to both Exhibits "C" and "D")

16.     On or before October 1, 2018, Huen secured primary commercial general liability Coverage from XL under Policy CGG 7409013 ("the Policy") with limits of $2,000,000 per occurrence, $4,000,000 aggregate.

17.     Upon information and belief, this Policy was renewed annually for all relevant time periods covering the Project beginning with CGG 7409013 07 (10/1/2018 – 10/1/2019); continuing CGG 7409013 08 (10/1/2019 – 10/1/2020), CGG 7409013 09 (10/1/2020 – 10/1/2021), CGG 7409013 10 (10/1/2021 – 10/1/2022), and CGG 7409013 11 (10/1/2022 – 10/1/2023).

18.     To comply with the ARCO – Huen subcontract, XL annually affixed an "Additional Insured – Owners, Lessees or Contractors – Completed Operations" endorsement XIL 2037-0704 (Ed.0413) to the Policy which provided as follows:

**SCHEDULE**

| Name of Additional Insured Person(s) or Organization(s) | Location and Description of Completed Operations |
| --- | --- |
| ANY PERSON OR ORGANIZATION THAT YOU ARE REQUIRED IN A WRITTEN CONTRACT OR WRITTEN AGREEMENT TO INCLUDE AS AN ADDITIONAL INSURED PROVIDED THE "BODILY INJURY" OR "PROPERTY DAMAGE" OCCURS SUBSEQUENT TO THE EXECUTION OF THE WRITTEN CONTRACT OR WRITTEN AGREEMENT | VARIOUS AS REQUIRED PER WRITTEN CONTRACT |
| Information required to complete this Schedule if not shown above, will be shown in the Declarations | |

Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part by

"your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

19.    The "products-completed operations hazard" includes "property damage" occurring away from the named insured's premises arising out of the named insured's products or work, except "work that has not yet been completed or abandoned". Under the endorsement, work will be deemed completed under the completed operations coverage at the earliest time when the work called for in the contract is complete or has been put to its intended use by the owner or anyone other than another subcontractor working on the same project. "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as complete."

## Huen commences performance for ARCO at the Project

20.    During the initial stages of Phase I (NE177) in 2018 Huen installed the first 35kv switchgear, a PowerCon switchgear.

21.    As the Project progressed, additional electrical demands were incorporated and Huen installed additional 35kv switchgear provided by Chicago Switchboard/Park in a second location.

22.    Change orders were issued for this second parallel 35kv switchgear denominated CO#20 dated 12/14/18. (See Exhibit "E")

23.    The 35kv upgrade was installed and then commissioned sometime August 1, 2019.

24.    In November 2019, Huen delivered the original Operation and Maintenance Manuals for the 35kv service to ARCO in bound form.

25.     Payments were made by ARCO to Huen and its subcontractors under NE177 after the delivery of the manuals, from January 2020 through till November 20, 2020, including retention amounts on or about August 24, 2020.  (See Exhibit "F").

26.     Final Completion of the Project for Phase I (NE177) occurred no earlier than January 3, 2020. Final Completion involved two applications by ARCO to American for release of funds and two separate lien releases. The first application involved the period up and through December 31, 2019, and the close out release was executed on January 3, 2020. The second application covered the period of time up and through April 30, 2021, and the final lien release was executed on May 5, 2021. (See Exhibit "G").

27.     Phase II, tenant improvement phase (NE575), began April 17, 2019. The parties again recognized that an additional electrical upgrade was necessary. This upgrade involved increasing the electrical service by another 7.5MVA to accommodate future process and mechanical loads. This upgrade involved the installation of an additional 35kv switch. This was accomplished through a change order CO#14, NE575-400. (See Exhibit "H")

28.     This upgrade involved Huen providing connection and integration to both the original 2018 work and the work performed under CO#20. (See Exhibit "I")

29.     In December of 2020, American requested ARCO's assistance regarding the implementation of a preventative maintenance program. ARCO responded by highlighting Operation and Maintenance obligations with visual inspections by qualified persons on an annual basis, "especially high corrosive areas where moisture, condensation, dust and syrup are present". (See Exhibit "J")

30.     Upon information and belief, no maintenance was performed by American between December of 2020 and January of 2023.

**American seeks redress from ARCO for alleged defects in construction and design of electrical system after discovery of continuous and progressive corrosion leads to electrical failures.**

31.     Sometime in January of 2023, American advised ARCO that they had sustained electrical failures and damage to the electrical switchgear necessitating the replacement of three (3) transformers and certain rear breaker connections.

32.     American advised ARCO that they had discovered the conditions in and around September 13, 2022, and found conditions indicating that moisture had infiltrated the equipment, caused corrosion and degradation leading to electrical tracking. (Electrical tracking in breakers and transformers refers to the abnormal formation of conductive paths or tracks, on insulating materials, instead of following the intended circuit, due to electrical stress).

33.     Based on the conditions observed and repaired in September of 2022, American believed that the similar conditions existed in other breakers that would lead to additional failures.

34.     Allegedly, December 31, 2022, a second electrical fault occurred. American investigated and retained Hi Volt Electric.

35.     On or about January 16, 2023, HiVolt provided a proposal for repair of the 26KV Main Switchgear. (See Exhibit "K"). Hi Volt recommended inspection by Burlington Electrical Testing Company (BET) to assess the conditions at other breakers and transformers and found the switchgear to be damp and expressing the same tracking patterns as seen previously.

36.     On or before March 14, 2023, BET documented photographically the surface contamination from long term exposure to moisture in the switchgear. (See Exhibit "L").

37.     BET indicated that an SEL 751 Feeder Relay was found to have failed in the presence of documented rust and corrosion due to moisture. This was alleged to have been the major cause of the September failures. (See BB1147-1 as Exhibit "M".)

38.     BET further contended that there were issues involving heaters that were designed to prevent moisture issues, along with defects in pad level and caulking. (*Id.*)

39.     On or about April 26, 2023, American demanded payment by ARCO of $1,000,000 which they contended was necessary to repair and replace the failed equipment.

40.     ARCO and Huen refused payment and contested responsibility for the alleged construction and design defects.

41.     On or about May 9, 2024, American filed a demand for AAA Arbitration alleging construction and design defects caused property damage to the electrical system installed by ARCO and Huen. (See Exhibit "N").

42.     Thereafter, ARCO filed a AAA joinder petition against Huen on June 14, 2024. (See Exhibit "O")

**ARCO tenders the Claims and Arbitration Demand to Huen and XL.**

43.     On September 21, 2023, ARCO tendered its defense to Huen and XL seeking recognition as an additional insured on multiple XL policies covering the period of the alleged continuous and progressive injury leading to the manifestation of injury. Neither party responded to accept the defense of ARCO despite their clear and unequivocal legal obligation to do so.

44.     On March 8, 2024, XL responded that it had no duty to defend as no suit had been filed.

45.     On or about March 21, 2024, ARCO retained outside counsel to represent them in the defense of the AAA Arbitration demand.

46.     ARCO has at all times relevant incurred the obligation to pay for its own defense counsel, despite having contractually bargained for a primary and non-contributory defense under these situations.

47.     Repeated requests for a written coverage position from XL were met with the excuse that the matter was under review.

48.     XL failed in every respect, despite the demand for defense, to respond in writing with a formal coverage position outlining why XL was unable to accept the defense of ARCO under one or more of the XL policies covering the period of progressive corrosion, tracking and degradation of the electric system.

49.     On or about June 14, 2024, ARCO again tendered the AAA Arbitration demand to Huen seeking a defense under the ARCO – Huen contract.

50.     On or about September 2024, ARCO contacted XL's claim representative John Kha, who provided an oral disclaimer of coverage based on the erroneous contention that the alleged damage was discovered outside what was described as a three (3) year completed operations window.

51.     XL's response ignored the plain meaning of the provisions in the ARCO-Huen contract, invented an erroneous calculation method for the termination of the promised completed operations additional insureds coverage and failed to consider established New Jersey trigger of coverage law pertaining to construction defect and continuous and progressive injury leading to manifestation of injury.

52.     Despite this erroneous representation, ARCO persisted in seeking its rights to a primary and non-contributing defense and reiterated another tender request to Huen's XL appointed defense counsel, John C. Macce, Esq. on October 4, 2024.

53.     Neither Huen nor XL responded in writing to accept or reject the defense of ARCO despite a clear and unequivocal legal obligation to do so.

54.     Upon information and belief, the delay tactic was deliberate. The parties had agreed to stay the AAA Arbitration pending private Mediation with retired New Jersey Superior Court Judge John Keefe. Upon information and belief, XL's delay was designed to gain a tactical advantage so that ARCO would be forced to contribute and then attempt to pursue equitable contribution after the fact.

55.     Because of XL's bad faith position with respect to additional insured's coverage for ARCO, the Mediation failed to produce a meeting of the minds, and the Arbitration was put back on the AAA calendar.

56.     On or about February 6, 2025, Huen and XL were made aware of the Statement of Claim filed by American. (See Exhibit "P")

57.     On or about February 18, 2025, ARCO resubmitted its demand for reconsideration of XL's erroneous oral coverage disclaimer.

58.     For the first time, on April 8, 2025, XL drafted a coverage position letter, disclaiming coverage but admitting that it had not sought the advice of outside coverage counsel but reiterating that they were not responsible to provide additional insured's coverage to ARCO. (See Exhibit "Q").

**XL ignores NJ trigger of coverage law on continuous and progressive injury arising out of construction defect or design defect compels; denies "day one" duty to defend.**

59.     The duty to defend is determined by the allegations set forth in the complaint.

60.     Both the Petition for Arbitration and the Statement of Claim form the applicable documents for the determination of the duty to defend in a AAA Arbitration.

61.     New Jersey law will apply to the interpretation of XL insurance agreements issued to Huen, a resident of NJ. Woodbridge, NJ is the principal location of the insured risk, and the XL insurance contract was negotiated, issued, and delivered in New Jersey. Moreover,

the ARCO-Huen contracts specify that the law of the place of the project applies to the requirements of the contract.

62.    Additional insured's coverage in New Jersey includes both direct and vicarious liability. *Navigators Specialty Ins. Co. v. Citizens Insurance Company of America*, 739 F.Supp.3d 259 (D. N.J. 2024)

63.    In *Flomerfelt v. Cardiello*, 202 N.J. 432, 444 (2010) the New Jersey Supreme Court reiterated the broad standard for when an insurer is required to provide a defense: In evaluating the complaint ... doubts are resolved in favor of the insured and, therefore, in favor of reading claims that are ambiguously pleaded, but potentially covered, in a manner that obligates the insurer to provide a defense." See also, *Abouzaid v. Mansard Gardens Assocs, LLC*, 207 N.J. 67 (2011)

64.    *Flomerfelt* interpreted *Burd v. Sussex Mutual Insurance Company*, 56 N.J. 383 (1970) to hold that "in circumstances in which the underlying coverage question cannot be decided from the face of the complaint," a "day one" duty to defend exists. *Flomerfelt* at 447.

65.    Additional insured general contractors must be defended from claims by their owner-developers where the defects allegedly caused consequential injury. Such claims constitute "occurrences". *CypressPoint Condominium Association v. Adria Towers, LLC,* et al, 226 NJ 403 (2016).

66.    New Jersey law on trigger of occurrence for these types of claims is not manifestation of injury; it is a "continuous trigger". Courts considering the duty to defend require every policy covering the additional insured from the completion of the defective work to the manifestation of injury to respond to these progressive defect claims. *Air Master & Cooling, Inc. v. Selective Ins. Co. of Am.* 452 N.J. Super 35 (App. Div. 2017).

67.    This Statement of Claim involves a continuous and progressive injury.

68.    The Statement of Claim provides support for the position that the injuries to the integrated electrical equipment commenced from the completion of the work in August of 2019 under NE177 and any change orders, and this injury involved corrosion, oxidation, degradation, and tracking, all leading to damage to the switchgear, which was discovered after an electrical fault in September of 2022.

69.    The Statement of Claim involves an ongoing failure to appropriately design, inspect, detect, caulk, and engage the use of appropriate heaters as it relates to the 35KV switches.

70.    There is a clear allegation in the Statement of Claim that the damage continued after the commissioning of the equipment: "As the lone heater was not turned on, moisture accumulated and remained, resulting in extreme and premature corrosion and oxidation".

71.    The AAA pleading further provides that the systems were not properly bonded, resulting in over currents, which damaged Claimant's equipment and machinery.

72.    The ARCO-Huen contract requires Huen to name ARCO as an additional insured for three years following **Final Completion of the Project**.

73.    XL contends that this required XL to provided completed operations additional insureds coverage for ARCO from August 1, 2019, to August 1, 2022, arbitrarily suggesting that the clock begins to run from the substantial completion of the subcontractor's work. ARCO disagrees as there is no contractual basis for the assertion.

74.    XL further argues that because the damage was manifested and discovered after a September 13, 2022, disruption in power, that no coverage is warranted on any of the following policy periods CGG 7409013 07 (10/1/2018 – 10/1/2019); CGG 7409013 08 (10/1/2019 –

10/1/2020), CGG 7409013 09 (10/1/2020 – 10/1/2021), CGG 7409013 10 (10/1/2021 – 10/1/2022). XL is simply incorrect under the law.

75.    Regardless of whether XL has accurately interpreted the ARCO-Huen contract (which it has not) as creating a completed operations coverage period beginning in August of 2019 and terminating under CGG 7409013 10 two months prematurely in August of 2022, XL is still required under NJ law to acknowledge that coverage for the continuing and progressive damage has been triggered under the three preceding policies, CGG 7409013 07 (10/1/2018 – 10/1/2019); CGG 7409013 08 (10/1/2019 – 10/1/2020) .

76.    XL is not permitted under New Jersey law to exclude coverage under the preceding CGL policies based on the manifestation of injury date, it must presume that each of the policies in force prior to the manifestation date experienced some progressive property damage for purposes of duty to defend, and as such were triggered by the allegations in the applicable pleadings.

**Substantial Completion of Huen's Work under NE 177 does not determine the dates of additional insured coverage; XL's disclaimer lacks reasonable basis.**

77.    XL misreads the ARCO - Huen contracts. XL theorizes that ARCO negotiated for three years of completed operations coverage beginning from the date of substantial completion of Huen's work. The Contracts however say something significantly different. The ARCO-Huen contract requires the three (3) year time period to run after **Final Completion of the Project**. Final Completion of the Project is not substantial completion of the contractor's work. There can be no mistake. Final Completion of the Project refers to the bottling facility itself, not the subcontractor's work. If the ARCO – Huen contract intended this construction, the parties would have used the terms suggested by Huen, but they did not. They specifically set the time period to run from the Final Completion of the Project, the construction of the shell under NE177.

78.     The ARCO-Huen contract documents and Exhibits use both terms and do not use them interchangeably. In the preamble of the agreement there is the following:

> This agreement ("Subcontract") is made and entered into between the ARCO Design/Build Northeast, Inc. ("Contractor") and Huen Electric New Jersey ("Subcontractor") as of 05/04/2017 concerning the following project: NE177 – Arizona Beverage, Woodbridge, NJ (the "Project")

79.     The ARCO – Huen contract provides at Article 4.2 as follows:

> 4.2     Subcontractor acknowledges its understanding that this Subcontract is an agreement under a General Contract concerning the Project, both of which include drawings and specifications and details illustrative thereof, between the Owner and the Contractor, and that Subcontractor is fully bound by and is familiar with those terms and provisions of the General Contract that pertain to the Work of this Subcontract. The Subcontractor hereby expressly assumes and promises to perform for the benefit of the Contractor, Owner and Owner's lenders (as their interests may appear) all of the obligations undertaken by the Contractor towards the Owner in the General Contract, to the extent of the Subcontractor's Work.

80.     "Final Completion" and "Substantial Completion" are terms that are separately defined in § A.9 of Exhibit A, Terms and Conditions part of AIA – A141 2004, the General Contract, (which is incorporated by reference into the ARCO-Huen subcontract.) These terms define two distinct times. "Substantial Completion" is the stage in the progress of the Work when the Work is sufficiently complete so that the Owner can occupy or use the work (§A.9.8.1). "Final Completion" refers to the time after final inspection where the final payment is made. Final payment occurs when all liens have been released and all warranties, guarantees and final documents have been delivered. (§A.9.10.1-3).

81.     Where the ARCO-Huen contract provides three (3) years after Final Completion of the Project (capital "P") there can be only one meaning: the obligation to provide AI coverage commences upon the final inspection, payment, waivers, warranties, other close out documents and releases are exchanged in relation to the Project, NE177.  The period in question does not depend on substantial completion of Huen's work under NE177 or any change order thereunder.

It does not depend on the expiration of any warranty period set by the substantial completion of the subcontractor's work. Where the capital "P" project is used in the ARCO-Huen contract, it refers to the completion of the Keasby facility not the contractor's work.

82.     The Final Completion of the Project occurred when the close out documents, final inspections and payments occurred between American and ARCO relative to Phase I. The date of this Final Completion occurred no earlier than January of 2020 and the completed operations period extends for three years January 2020 – January 2023 under the ARCO – Huen subcontract.

83.     All progressive injury and loss from the August 2019 commissioning through the first September 13, 2022, electrical fault and the second December 31, 2022, electrical fault occurred within the XL completed operations coverage period.

84.     All XL policies, CGG 7409013 07 (10/1/2018 – 10/1/2019); CGG 7409013 08 (10/1/2019 – 10/1/2020), CGG 7409013 09 (10/1/2020 – 10/1/2021), CGG 7409013 10 (10/1/2021 – 10/1/2022), are triggered and provide primary and non-contributing coverage for ARCO.

85.     Contrary to New Jersey law, XL has not disclaimed coverage based on the allegations in the pleadings or the terms and conditions of its coverages, or any exclusions, or any proper consideration of extrinsic evidence: rather, XL has gone outside the pleadings, not to find coverage, but to exonerate itself, by disregarding and distorting the plain meaning of the ARCO-Huen subcontract.

86.     XL has disclaimed coverage on an arbitrary and capricious basis abandoning long established New Jersey trigger of coverage law principles.

**XL ignores the obligation to provide completed operations under the ARCO – Huen NE575 April 19, 2019, subcontract and relevant change orders**

87.    The Statement of Claim seeks damages against Defendant ARCO for allowing the accumulation of moisture, oxidation, corrosion and tracking leading to switchgear failure. ongoing failure to inspect, detect, caulk, and addresses the failure of the use of appropriate heaters as it relates to the 35KV Park switches.

88.    Huen's November 2019 7.5MVA upgrade under Phase II NE575 included the installation of another 35KV switch that was integrated and connected into the first two. The upgrade required Huen to tie into the NE177 work and inspect both the original ProCon equipment and the Park equipment.

89.    The ARCO – Huen April 17, 2019, covering Phase II NE575 contains the same insurance requirements as the May 4, 2017, ARCO – Huen contract covering Phase I NE177. Huen promised under both contracts to provide primary and non-contributing additional insured current, ongoing and completed operations coverage for ARCO for three years after Final Completion of the Project.

90.    XL has an obligation to undertake a coverage analysis under the policies covering ARCO for Huen's conduct under the NE575 which includes potential claims of negligence in failing to recognize excess moisture and corrosion in the NE177 work while installing the NE575 upgrade.

91.    XL has not properly evaluated whether CGG 7409013 10 (10/1/2021 – 10/1/2022) is triggered based on the allegations in the Statement of Claim and the terms of the April 17, 2019, ARCO-Huen Agreement.

92.    Final Completion of Phase II NE575 occurred substantially after the December 31, 2022, second electrical fault.

16

## COUNT I

## DECLARATORY JUDMENT - DUTY TO DEFEND

93.     Plaintiff incorporates allegations 1-92 as if fully set forth herein at length.

94.     For reasons set forth more fully above, ARCO contends that XL has at all relevant times since "day one" breached its duty to ARCO as an additional insured to provide a primary and non-contributing defense to the allegations set forth by American in the AAA Petition and Statement of Claim.

95.     ARCO contends further that the allegations contained in the relevant pleadings are sufficient to trigger multiple (4) XL CGL policies covering the period of time from the commissioning of the upgraded 35kv switchgear under NE177 through to the period of time of the discovery of the corrosion, oxidation, tracking, degradation of the switchgear in September of 2022 and December of 2022.

96.     ARCO contends that there are no applicable exclusions that have been properly raised by XL as to coverage under the Additional Insured's Endorsement affixed to the XL policies.

97.     ARCO contends that XL's attempts to ascribe a manifestation trigger to the circumstances of this loss is erroneous and not "fairly debatable". See *Pickett v. Lloyd's*, 131 N.J. 457 (1993); *Sensient Colors, Inc. v. Allstate Ins. Co*., 193 N.J. 373, 393–394 (citing *Pickett*)

98.     ARCO contends that XL's attempt to fashion from extrinsic evidence an argument disclaiming XL's obligation to provide ARCO additional insured coverage based on the contention that such coverage terminated 3 years from substantial completion of the subcontractor's work and prior to manifestation of injury should be rejected in the context of duty to defend. Such an argument is unsupported by any extrinsic evidence, is clearly erroneous and not "fairly debatable".

99.    ARCO contends that XL has failed in all respects to conduct any reasonable and competent coverage analysis following the execution of the ARCO – Huen contracts.

100.    XL disputes these contentions; therefore, the duty to defend is a live controversy and determination is necessary and proper at this time.

WHEREFORE, Plaintiff requests judgment in its favor and an ORDER compelling XL to:

a.    Reimburse ARCO for any and all legal costs and expenses incurred to date;

b.    Provide ARCO with an ongoing current defense of the AAA Arbitration claims;

c.    Such other relief as is necessary and proper at this time.

## COUNT II

## DECLARATORY JUDGMENT – DUTY TO INDEMNIFY

101.    Plaintiff incorporates by reference paragraphs 1-100 as if full set forth herein at length.

102.    ARCO's contracts require that Huen secure primary and non-contributing additional insured's coverage up to the limits set forth in the subcontract.

103.    For all the reasons set forth more fully above, ARCO is entitled to a primary and non-contributing indemnification of any loss or damage imposed by the AAA Arbitrator up to the limits of XL's primary coverage.

104.    If ARCO is found liable for injury or loss arising out of or caused by the acts, omissions or failures to act of Huen alone, or concurrently, or on a vicarious basis, ARCO is entitled to indemnification from XL up to the limits provided under the XL policy.

WHEREFORE, Plaintiff requests judgment in its favor and an ORDER compelling XL to:

a.    Indemnify ARCO for all loss or damage imposed by the AAA Arbitrator, whether caused whole or in part by the acts or omissions of Huen, up to the limits of the XL policy

b.    Such other relief as is necessary and proper at this time.

## COUNT III

## COMMON LAW BAD FAITH

105.    Plaintiff incorporates paragraphs 1-104 as if fully set forth herein at length.

106.    ARCO has requested repeatedly and with substantial justification that XL accept the defense of ARCO, and XL has failed to act reasonably, promptly and communicate their position.

107.    XL lacks any reasonable basis to deny the duty to defend under one or more policies of insurance.

108.    None of the reasons set forth orally or in writing by XL are fairly debatable excuses for the decision to deny ARCO's defense tender. They are frivolous and unfounded refusals to pay the benefits of the additional insured's coverage.

109.    By its own admissions, none of the positions asserted by XL have been properly researched under New Jersey law.

110.    XL's motivation in this matter is to delay and deny coverage seeking to leverage ARCO to potentially contribute to a proposed settlement in such amounts as it would otherwise not be required had XL honored its obligations to provide a primary and non-contributing defense and indemnification.

111.    XL's delay in responding to its additional insured duty to defend in writing and without supplying necessary New Jersey law protections is a violation of the New Jersey Unfair

Claim Settlement Practices Acts and, as such, would provide an evidentiary basis for claims of common law bad faith.

WHEREFORE, Plaintiff requests judgment in its favor and an ORDER awarding bad faith damages:

      a.      For such third-party claim costs that may be required for settlement or judgment;

      b.      Including reasonable attorney's fee and other defense costs and expense;

      c.      Including such consequential damages that are a direct result of XL's bad faith; and

      d.      Punitive damages.

## COUNT IV

## PREVAILING PARTY DECLARATORY JUDGMENT FEES AND COSTS

112.    Plaintiff incorporates paragraphs 1-111 as if more fully set forth herein at length.

113.    The claims asserted here are based on a liability policy. XL's position is a total coverage denial.

114.    ARCO, should it succeed as a claimant party that obtains a favorable adjudication on a coverage issue such that a recovery of defense fees is compelled, reserves its right to seek recovery of the legal fees and costs expended in the declaratory judgment action under N.J. COURT R. 4:42-9(a)(6).

WHEREFORE, in light of all the Counts set forth above, Plaintiff requests judgment in its favor and an ORDER as follows that:

      a.      XL has breached its duty to defend ARCO.

      b.      ARCO is entitled to a full, complete and unreserved, primary and non-contributing defense of the claims being asserted against it in the AAA Arbitration.

c.    XL shall promptly reimburse ARCO all legal fees, expenses and costs incurred since the date of the tender of its defense.

d.    XL's denial of the duty to defend was arbitrary, capricious and not fairly debatable.

e.    ARCO is entitled to bad faith damages, including punitive damage, for such injuries it has sustained, including reasonable attorney's fees, consequential damages and other defense costs and expenses.

f.    such other relief as is necessary and proper at this time, including but not limited to prevailing party attorney's fees under N.J. COURT R. 4:42-9(a)(6).

Dated: May 9, 2025

ARCO DESIGN/BUILD INDUSTRIAL
PHILADELPHIA, INC., Plaintiff,

By _____

Michael T. McDonnell, III
KUTAK ROCK LLP
100 N. 18th Street, Suite
1920Philadelphia, PA  19103
(215) 299-4384 (Telephone)

*Attorney for ARCO Design/Build
Industrial Philadelphia, Inc., Plaintiff*

4927-6595-9990.2